THE STATE OF OHIO, APPELLEE, *v.* FERGUSON, APPELLANT.

[Cite as *State v. Ferguson,* 120 Ohio St.3d 7, 2008-Ohio-4824.]

(No. 2007–1427—Submitted May 6, 2008—Decided October 1, 2008.)

O'CONNOR, J.

{¶ 1} Appellant, Andrew J. Ferguson, a convicted rapist classified as a sexual predator, challenges the constitutionality of the 2003 version of R.C. Chapter 2950, the Sexual Offender Registration and Notification Law ("SORN"). SORN was amended by Am.Sub.S.B. No. 5 ("S.B. 5"), effective July 31, 2003.[1] Appellant claims that S.B. 5 violates the Ex Post Facto Clause of the United States Constitution and Section 10, Article I and Section 28, Article II of the Ohio Constitution, which states that the General Assembly has no power to enact laws that apply retroactively. See *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 105, 522 N.E.2d 489.

{¶ 2} The court of appeals rejected his claims, holding that former R.C. Chapter 2950 as amended by S.B. 5, 150 Ohio Laws, Part IV, 6558, 6687–6702, remains constitutional. We affirm.

## Relevant Background

{¶ 3} In August 1990, Ferguson was convicted of three counts of rape and one count of kidnapping. He was sentenced to prison for 15 to 25 years. On direct appeal, his conviction and sentence were affirmed. *State v. Ferguson* (June 4, 1992), Cuyahoga App. No. 60713, 1992 WL 126046.

{¶ 4} In June 2006, the trial court classified Ferguson as a sexual predator. That designation was based on Ferguson's criminal record, which includes convictions for multiple rapes and robberies over 30 years, and the results of psychological assessments indicating that Ferguson has a high risk of committing another sexual offense. The sexual-predator designation requires Ferguson to

---

1. After the amendments by Am.Sub.S.B. No. 5, the statute was amended again by 2007 Am.Sub.S.B. No. 10, most of which became effective on January 1, 2008. Our review here does not include statutory changes by S.B. 10.

verify his residential, school, and work addresses every 90 days for life. Former R.C. 2950.04(A) and 2950.06(B)(1), 150 Ohio Laws, Part IV, 6558, 6657–6661, 6673–6674. It also requires information on Ferguson to be a public record available on a law-enforcement database. R.C. 2950.08(A). Finally, the law restricts where Ferguson may live. Former R.C. 2950.031(A), 150 Ohio Laws, Part IV, 6558, 6657. Under S.B. 5, his designation as a sexual predator can never be modified. Former R.C. 2950.07(B)(1), 150 Ohio Laws, Part IV, 6558, 6681–6682. Ferguson remains imprisoned.

{¶ 5} Ferguson appealed the classification. He argued that the statutory amendments set forth in S.B. 5, as applied to him, violate the Ex Post Facto Clause of the United States Constitution and the retroactivity clause of the Ohio Constitution because the amendments were enacted after he committed his crimes and after his adjudication. The court of appeals rejected his claim and affirmed the classification. *State v. Ferguson*, Cuyahoga App. No. 88450, 2007-Ohio-2777, 2007 WL 1644449.

{¶ 6} Although we previously have rejected similar constitutional challenges to former versions of R.C. Chapter 2950, we asserted discretionary jurisdiction over Ferguson's appeal, *State v. Ferguson*, 115 Ohio St.3d 1472, 2007-Ohio-5735, 875 N.E.2d 626, to address the important questions that arise from statutory changes wrought by S.B. 5.

{¶ 7} Those changes were driven by the General Assembly's finding that all sex offenders pose a risk of engaging in further sexually abusive behavior after being released from prison and that the protection of the public from those offenders is a paramount governmental interest.[2] Legislative Service Commission, Bill Analysis, Am.Sub.S.B. No. 5 (2003). The General Assembly altered an array of provisions in R.C. Chapter 2950. Accordingly, the legislature "[m]odifie[d] most of the determinations, declarations, recognitions, and findings of the General Assembly regarding the SORN Law that [formerly applied] only regarding sexual predators and habitual sex offenders so that they instead apply regarding all sex offenders, offenders who commit sexually oriented offenses, child-victim

---

2. Scientific literature and research on sex offenders are somewhat equivocal. Many courts, including this one and the United States Supreme Court, have cited studies finding high recidivism rates in rapists and pedophiles. See, e.g., *McKune v. Lile* (2002), 536 U.S. 24, 34, 122 S.Ct. 2017, 153 L.Ed.2d 47; *State v. Eppinger* (2001), 91 Ohio St.3d 158, 160–161, 743 N.E.2d 881. Other research indicates that there is no increased risk of recidivism among sex offenders when compared to other criminals. See, e.g., Office of Criminal Justice Services, Report to the Ohio Criminal Sentencing Commission: Sex Offenders (Jan. 2006) 13. Our role is not to determine which view is the better reasoned or more empirically accurate one, or to judge the wisdom of the General Assembly's conclusions about the debate as those conclusions are reflected in Am.Sub.S.B. 5. Rather, our task here is limited to determining whether the amended statute may be applied to offenders whose crime was committed and adjudicated prior to the effective date of the amendments.

offenders, and offenders who commit a child-victim oriented offense, and by making a few other changes in the provisions." Id. Those "few other changes" include those raised by Ferguson's appeal, which centers on three amended provisions [3] in the statute.

{¶ 8} First, Ferguson challenges former R.C. 2950.07(B)(1), 150 Ohio Laws, Part IV, 6558, 6657, which provides that the designation "predator" remains for life, as does the concomitant duty to register. An earlier version of this section allowed for review of the predator classification by a judge and the possible removal of that classification. See former R.C. 2950.09(D), Am.Sub.H.B. No. 180, 146 Ohio Laws, Part II, 2560, 2621–2623.

{¶ 9} Second, Ferguson challenges former R.C. 2950.04(A), 150 Ohio Laws, Part IV, at 6657–6658, which provides that sex offenders are required to personally register with the sheriff in their county of residence, the county in which they attend school, and the county in which they work, and that they must do so every 90 days. R.C. 2950.06(B)(1)(a). Previously, offenders had been required to register only in their county of residence. See former R.C. 2950.06(B)(1), 146 Ohio Laws, Part II, 2560, 2613.

{¶ 10} Third, Ferguson challenges amended R.C. 2950.081, 150 Ohio Laws, Part IV, at 6686–6687, which expands the community-notification requirements. After S.B. 5, any statements, information, photographs, and fingerprints required to be provided by the offender are public records and are included in the Internet database of sex offenders maintained by the Attorney General's office. Former R.C. 2950.081 and 2950.13, 150 Ohio Laws, Part IV, at 6726–6730.

{¶ 11} We turn now to the provisions at issue.

## Analysis

{¶ 12} Our inquiry begins with a fundamental understanding: a statute enacted in Ohio is presumed to be constitutional. *State ex rel. Jackman v. Cuyahoga Cty. Court of Common Pleas* (1967), 9 Ohio St.2d 159, 161, 38 O.O.2d 404, 224 N.E.2d 906. That presumption applies to amended R.C. Chapter 2950, *State v. Cook* (1998), 83 Ohio St.3d 404, 409, 700 N.E.2d 570, and remains unless Ferguson establishes, beyond reasonable doubt, that the statute is unconstitutional. *Roosevelt Properties Co. v. Kinney* (1984), 12 Ohio St.3d 7, 13, 12 OBR 6, 465 N.E.2d 421.

---

3. Initially, Ferguson also challenged the amendment to R.C. 2950.031, which prohibited sex offenders from living within 1,000 feet of a school. At oral argument, however, he conceded that that issue had been resolved by our recent decision in *Hyle v. Porter,* 117 Ohio St.3d 165, 2008-Ohio-542, 882 N.E.2d 899 (holding that R.C. 2950.031 may not be applied retrospectively). We thus do not consider that claim here.

## I. Retroactivity

{¶ 13} The analysis of claims of unconstitutional retroactivity is guided by a binary test. We first determine whether the General Assembly expressly made the statute retrospective. *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 10. If we find that the legislature intended the statute to be applied retroactively, we proceed with the second inquiry: whether the statute restricts a substantive right or is remedial. Id. If a statute affects a substantive right, then it offends the Constitution. *Van Fossen*, 36 Ohio St.3d at 106, 522 N.E.2d 489.

### A

{¶ 14} Because "[w]e do not address the question of constitutional retroactivity unless and until we determine that the General Assembly expressly made the statute retroactive," *Hyle v. Porter*, 117 Ohio St.3d 165, 2008-Ohio-542, 882 N.E.2d 899, ¶ 9, citing *Van Fossen*, 36 Ohio St.3d at 106, 522 N.E.2d 489, our first inquiry focuses on whether the amendments to R.C. Chapter 2950 are expressly retroactive.

{¶ 15} Statutes are presumed to apply only prospectively unless the General Assembly specifically indicates that a statute applies retrospectively. R.C. 1.48; *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 40. In the typical case, "[i]n order to overcome the presumption that a statute applies prospectively, a statute must 'clearly proclaim' its retroactive application." *Hyle*, ¶ 10, citing *Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, paragraph one of the syllabus.

{¶ 16} That test is satisfied easily in light of the express language of former R.C. 2950.041(A), 150 Ohio Laws, Part IV, 6558, 6665–6666, which governs the registration provisions requiring child-oriented sex offenders to register with the sheriff in each county in which the offender resides, is temporarily domiciled, works, or attends school. The wording of former R.C. 2950.041(A) specifically states that it applies to offenders who were sentenced to prison for offenses against children "[r]egardless of when the child-victim oriented offense was committed." Former R.C. 2950.041(A)(1)(a) and (b), 150 Ohio Laws, Part IV, at 6665. The section clearly states that it applies to offenders whose offense was committed prior to the effective date of the section and who were required to register as a result of a conviction or plea. Id. In such cases, that former provision states that the duty imposed is considered a continuation of the duty imposed on the offender "prior to the effective date of this section under section 2950.04 of the Revised Code." Former R.C. 2950.041(A)(1)(c), 150 Ohio Laws, Part IV, at 6666.

{¶ 17} As we did in *Cook*, 83 Ohio St.3d 404, 700 N.E.2d 570, paragraphs one and two of the syllabus, we have no difficulty concluding that the statutory language demonstrates that the General Assembly intended former R.C. 2950.041(A) to apply retrospectively.

{¶ 18} We turn next to the new registration requirements set forth in amended R.C. 2950.081, 150 Ohio Laws, Part IV, at 6686–6702, and amended R.C. 2950.09, id. at 6687.

{¶ 19} R.C. 2950.081 governs the disclosure of information provided by sex offenders to sheriffs as part of the registration required by other statutory provisions. As amended by S.B. 5, the statute provides that the statements, information, photographs, and fingerprints provided by the offender to the sheriff are public records subject to disclosure in accordance with Ohio law. R.C. 2950.081(A).

{¶ 20} Finally, we consider the fact that classification as a sexual predator is unalterable under S.B. 5. Former R.C. 2950.09(C)(1) governed the classification of offenders who, like Ferguson, had been convicted of or pleaded guilty to a sex offense and were sentenced for that offense before January 1, 1997, but who are imprisoned on or after January 1, 1997. 150 Ohio Laws, Part IV, at 6687. Pursuant to the S.B. 5 provisions, if an offender is classified as a sexual predator, the classification remains permanent, except in limited circumstances. See former R.C. 2950.09(D)(2) and (F). 150 Ohio Laws, Part IV, at 6698, 6701–6702.

{¶ 21} These amended sections arise in an analytical posture different from R.C. 2950.041(A). Unlike many of the cases that are the subjects of our recent decisions employing retroactivity analysis, see, e.g., *Hyle*, 117 Ohio St.3d 165, 2008-Ohio-542, 882 N.E.2d 899, and *Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, here, we do not write on a blank slate. Rather, our analysis of the amended statutory provisions must recognize our prior decision in *Cook*, which considered—and rejected—ex post facto and retroactivity claims in relation to the classification provisions of an earlier provision of R.C. 2950.09(B)(1). See 146 Ohio Laws, Part II, 2560, 2618–2624; *Cook*, 83 Ohio St.3d 404, 700 N.E.2d 570, at paragraphs one and two of the syllabus.

{¶ 22} We must presume that the General Assembly knew of our decision in *Cook*. *Clark v. Scarpelli* (2001), 91 Ohio St.3d 271, 278, 744 N.E.2d 719, citing *State ex rel. Huron Cty. Bd. of Edn. v. Howard* (1957), 167 Ohio St. 93, 96, 4 O.O.2d 83, 146 N.E.2d 604 ("It is presumed that the General Assembly is fully aware of any prior judicial interpretation of an existing statute when enacting an amendment").

{¶ 23} Moreover, the General Assembly has shown no hesitation in acting promptly when it disagrees with appellate rulings involving statutory construction and interpretation. See, e.g., *Shay v. Shay*, 113 Ohio St.3d 172, 2007-Ohio-1384,

863 N.E.2d 591, ¶ 25 (noting that the General Assembly amended R.C. 3937.31 in specific response to our decision in *Wolfe v. Wolfe* (2000), 88 Ohio St.3d 246, 725 N.E.2d 261); *State ex rel. White v. Billings,* Clermont App. No. CA2006–09–072, 2007-Ohio-4356, 2007 WL 2410895, ¶ 27 (noting that in the wake of the court of appeals' decision in *State v. Consilio,* Summit App. No. 22761, 2006-Ohio-649, 2006 WL 335646, holding that the statute could not be applied retroactively because there was no express statutory language to that effect, the General Assembly amended R.C. 2901.07 in July 2006 to reaffirm its intent that the statute be applied retroactively); *Pettit v. Buhrts* (Apr. 18, 1996), Franklin App. No. 95APE06–765, 1996 WL 188563, *4 (Holmes, J., dissenting) (describing the General Assembly's amendments to R.C. 3937.18, which were written in specific response to our decision in *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, and to supersede our decision).

{¶ 24} We recognize that S.B. 5 altered some sections of R.C. Chapter 2950, but none of the changes in the amendments suggest that the legislature did not agree with our prior ruling in *Cook,* 83 Ohio St.3d 404, 700 N.E.2d 570. In amending the statute, the General Assembly did not insert language that limited retrospective application of the provisions upheld in *Cook.* We find that fact significant.

{¶ 25} We had interpreted the SORN laws as retroactive before S.B. 5, and the General Assembly has declined to override our interpretation as to their retroactivity. "Where a statute is construed by a court of last resort having jurisdiction, and such statute is thereafter amended in certain particulars, but remains unchanged so far as the same has been construed and defined by the court, it will be presumed that the Legislature was familiar with such interpretation at the time of such amendment, and that such interpretation was intended to be adopted by such amendment as a part of the law, unless express provision is made for a different construction." *Spitzer v. Stillings* (1924), 109 Ohio St. 297, 142 N.E. 365, syllabus. Given the absence of any contradiction by the legislature, we believe that when the General Assembly enacted S.B. 5, it assumed, and intended, that the provisions held to be retrospective in *Cook,* 83 Ohio St.3d 404, 700 N.E.2d 570, should continue to be treated in that manner.

{¶ 26} Our preliminary inquiry concluded, we proceed with the second part of our analysis.

B

{¶ 27} The second part of our analysis involves determining whether S.B. 5 amendments impair vested, substantial rights. *Consilio,* 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 9. If the statute is retrospective and impairs vested substantive rights, it is unconstitutional. *State v. LaSalle,* 96 Ohio St.3d 178, 2002-Ohio-4009, 772 N.E.2d 1172, ¶ 13. If the amendments are merely

remedial in nature, however, they are not unconstitutional on retroactivity grounds. *Consilio*, at ¶ 9.

{¶ 28} R.C. Chapter 2950 is replete with references to the legislature's intent to "protect the safety and general welfare of the people of this state" and to "assur[e] public protection," R.C. 2950.02(B), in light of the legislative determination that "[s]ex offenders and offenders who commit child-victim oriented offenses pose a risk of engaging in further sexually abusive behavior even after being released from imprisonment * * *." Former R.C. 2950.02(A)(2), 150 Ohio Laws, Part IV, at 6645.

{¶ 29} In light of that legislative intent, we have held consistently that R.C. Chapter 2950 is a remedial statute. In *Cook*, we held that R.C. Chapter 2950 did not offend the Ohio Constitution's retroactivity clause because it was meant to protect the public and, therefore, was remedial rather than punitive. See 83 Ohio St.3d at 417, 700 N.E.2d 570. We again noted the remedial nature of R.C. Chapter 2950 in *State v. Williams* (2000), 88 Ohio St.3d 513, 528, 728 N.E.2d 342, observing that the statute was "neither 'criminal,' nor a statute that inflicts punishment."

{¶ 30} Although recently we have been more divided in our conclusions about whether the statute has evolved from a remedial one into a punitive one, *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, a majority of the court ultimately held that the statute remained civil in nature and that the civil appellate standards applied in reviewing the evidence supporting classification determinations.[4] Id. at ¶ 41.

{¶ 31} Ferguson recognizes our precedent holding that R.C. Chapter 2950 is remedial, but urges us to find that "[w]ith the changes promulgated by S.B. 5, * * * the punitive intent of the legislature is now apparent." He asserts that S.B. 5 is substantive and unfairly burdens him because he had "previously enjoyed the right to be able to have a trial court revisit his status as a sexual predator; that right has been taken away. While, previously, he knew that his neighbors would know of his predator status, he now has been subjected to the increased burdens and publicity attendant to having to register wherever he lives,

---

4. I joined Justice Lanzinger's dissent in *Wilson*, but it did not garner sufficient votes to form the majority and thus has no precedential value. See *Shay*, 113 Ohio St.3d 172, 2007-Ohio-1384, 863 N.E.2d 591, ¶ 26. Justice Stratton's opinion formed the rule of law in *Wilson*, which provides, "Because sex-offender-classification proceedings under R.C. Chapter 2950 are civil in nature, a trial court's determination in a sex-offender-classification hearing must be reviewed under a civil manifest-weight-of-the-evidence standard and may not be disturbed when the judge's findings are supported by some competent, credible evidence." (Emphasis added.) 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at syllabus.

works or studies, and with state-wide internet dissemination that is mandated by law, not simply permitted."

{¶ 32} As we have before, we acknowledge that R.C. Chapter 2950 may pose significant and often harsh consequences for offenders, including harassment and ostracism from the community. *Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 46 (Lanzinger, J., dissenting); *Cook*, 83 Ohio St.3d at 413, 700 N.E.2d 570. We disagree, however, with Ferguson's conclusion that the General Assembly has transmogrified the remedial statute into a punitive one by the provisions enacted through S.B. 5.

{¶ 33} Contrary to Ferguson's assertions, the remedial nature of R.C. Chapter 2950 was not altered by the elimination of the provision that permitted a judge to remove the sexual-predator classification.

{¶ 34} As an initial matter, we observe that an offender's classification as a sexual predator is a collateral consequence of the offender's criminal acts rather than a form of punishment per se. Ferguson has not established that he had any reasonable expectation of finality in a collateral consequence that *might* be removed. Indeed, the record before us is entirely devoid of such an argument and of any evidence that would support a reasonable conclusion that Ferguson was likely to have his classification removed. Absent such an expectation, there is no violation of the Ohio Constitution's retroactivity clause. See *State ex rel. Matz v. Brown* (1988), 37 Ohio St.3d 279, 282, 525 N.E.2d 805 ("for purposes of analysis under Section 28, Article II, Ohio Constitution, we hold that a law that attaches a new disability to a past transaction or consideration is not a prohibited retroactive law unless the past transaction or consideration created at least a reasonable expectation of finality"). Accord *California Dept. of Corr. v. Morales* (1995), 514 U.S. 499, 509, 115 S.Ct. 1597, 131 L.Ed.2d 588 (rejecting an ex post facto challenge to a statutory amendment that permitted a decrease in the number of parole hearings to once every three years, noting that there was only a "speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment" by not permitting an earlier parole hearing).

{¶ 35} More compelling, however, is the fact that the United States Supreme Court and state appellate courts have upheld provisions similar to the permanent, lifetime classification imposed by S.B. 5's amendments. See *Smith v. Doe* (2003), 538 U.S. 84, 90, 103–104, 123 S.Ct. 1140, 155 L.Ed.2d 164; *Commonwealth v. Lee* (2007), 594 Pa. 266, 935 A.2d 865, 885. Central to these holdings is the understanding that the legislatures enacting such statutes found recidivism rates of sex offenders to be alarming and that an offender's recidivism may occur years after his release from confinement rather than soon after his initial reentry to society. See, e.g., *Smith*, 538 U.S. at 103–104, 123 S.Ct. 1140, 155 L.Ed.2d 164.

After review of the General Assembly's findings and its clear reaffirmation of an intent to protect the public from sex offenders, we are not persuaded that eliminating the provision that permitted removal of the predator classification was driven by a punitive or retributive intent. To the contrary, we believe that the legislature did so in an effort to better protect the public from the risk of recidivist offenders by maintaining the predator classification so that the public had notice of the offender's past conduct—conduct that arguably is indicative of future risk.

{¶ 36} Similarly, we believe that the General Assembly's findings also support the conclusion that the more burdensome registration requirements and the collection and dissemination of additional information about the offender as part of the statute's community notification provisions were not born of a desire to punish. Rather, we determine that the legislative history supports a finding that it is a remedial, regulatory scheme designed to protect the public rather to punish the offender [5]—a result reached by many other courts. See, e.g., *Arizona Dept. of Pub. Safety v. Maricopa Cty. Superior Ct.* (1997), 190 Ariz. 490, 495, 949 P.2d 983 (describing a legislative history that "evinces a regulatory objective to forestall future incidents of sexual abuse by notifying those who may well encounter a potential recidivist, not to punish a past offense").

{¶ 37} Ferguson may be adversely affected by the amended provisions, just as he was affected by the former provisions. But "the sting of public censure does

---

5. Although the General Assembly's stated intent is not dispositive, it is an important consideration in determining whether a statute is punitive. *Cook*, 83 Ohio St.3d at 417–418, 700 N.E.2d 570; *Smith*, 538 U.S. at 92, 123 S.Ct. 1140, 155 L.Ed.2d 164. We thus weigh it heavily. R.C. 2950.02 sets forth the legislative findings and public policy declaration of the General Assembly, which maintained prior findings that by providing adequate notice and information about offenders who commit sexually oriented offenses, the public "*can develop constructive plans to prepare themselves and their children* for the offender's * * * release" and reentry into the community. (Emphasis added.) R.C. 2950.02(A)(1). In addition, the legislature reaffirmed its conclusions that sex offenders pose "a risk of engaging in further sexually abusive behavior" after imprisonment and that protection of the public from sex offenders is "a paramount governmental interest," R.C. 2950.02(A)(2); that "[o]verly restrictive confidentiality and liability laws governing the release of information about sex offenders and child-victim offenders have reduced the willingness to release information that could be appropriately released *under the public disclosure laws and have increased risks of public safety* " (emphasis added), R.C. 2950.02(A)(4); and that offenders have "a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government," R.C. 2950.02(A)(5). In light of these and other findings, the General Assembly declared its intent "*to protect the safety and general welfare of the people of this state* " and that it "is the policy of this state to require the exchange in accordance with this chapter of relevant information about sex offenders and child-victim offenders among public agencies and officials and to authorize the release * * * of necessary and relevant information about sex offenders and child-victim offenders to members of the general public *as a means of assuring public protection* and that the exchange or release of that information *is not punitive.*" (Emphasis added.) R.C. 2950.02(B).

not convert a remedial statute into a punitive one." *Cook,* 83 Ohio St.3d at 423, 700 N.E.2d 570, citing *Montana Dept. of Revenue v. Kurth Ranch* (1994), 511 U.S. 767, 777, 114 S.Ct. 1937, 128 L.Ed.2d 767, fn. 14. And although the scorn of the public may be the result of a sex offender's conviction and his ensuing registration and inclusion in the public database, we do not believe that scorn is akin to colonials' clearly punitive responses to similar offenses, which ranged from public shaming to branding and exile.[6] See *Smith,* 538 U.S. at 97–98, 123 S.Ct. 1140, 155 L.Ed.2d 164. If a legislative restriction is an incident of the state's power to protect the health and safety of its citizens, it should be considered as evidencing an intent to exercise that regulatory power rather than as an intent to punish. Id. at 92–93, 123 S.Ct. 1140, 155 L.Ed.2d 164.

{¶ 38} We conclude that the General Assembly's purpose for requiring the dissemination of an offender's information is the belief that education and notification will help inform the public so that it can protect itself. "Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation." *Smith,* 538 U.S. at 99, 123 S.Ct. 1140, 155 L.Ed.2d 164.

{¶ 39} Ohio retroactivity analysis does not prohibit all increased burdens; it prohibits only increased punishment. In distinguishing between the two, we are mindful that the Supreme Court has noted that "whether a sanction constitutes punishment is not determined from the defendant's perspective, as even remedial sanctions carry the 'sting of punishment,'" *Kurth Ranch,* 511 U.S. at 777, 114 S.Ct. 1937, 128 L.Ed.2d 767, fn. 14, quoting *United States v. Halper* (1989), 490 U.S. 435, 447, 109 S.Ct. 1892, 104 L.Ed.2d 487, fn. 7, and that a statutory scheme that serves a regulatory purpose "is not punishment even though it may bear harshly upon one affected." *Flemming v. Nestor* (1960), 363 U.S. 603, 614, 80 S.Ct. 1367, 4 L.Ed.2d 1435. "[C]onsequences as drastic as deportation, deprivation of one's livelihood, and termination of financial support have not been considered sufficient to transform an avowedly regulatory measure into a punitive one." *Doe v. Pataki* (C.A.2, 1997), 120 F.3d 1263, 1279.

{¶ 40} Thus, notwithstanding the sequela of the classification and the amended provisions of R.C. Chapter 2950, we do not conclude that the amended statute violates the retroactivity clause of the Ohio Constitution.

## II. Ex Post Facto

{¶ 41} Ferguson asserts that the S.B. 5 amendments, as applied to him, violate federal constitutional protections against ex post facto laws. Our analysis of this

---

6. As the Supreme Court has observed, "an imposition of restrictive measures on sex offenders adjudged to be dangerous is 'a legitimate nonpunitive governmental objective and has been historically so regarded.'" *Smith,* 538 U.S. at 93, 123 S.Ct. 1140, 155 L.Ed.2d 164, quoting *Kansas v. Hendricks* (1997), 521 U.S. 346, 363, 117 S.Ct. 2072, 138 L.Ed.2d 501.

claim begins with the Supreme Court's decision in *Seling v. Young* (2001), 531 U.S. 250, 121 S.Ct. 727, 148 L.Ed.2d 734.

{¶ 42} In *Young,* a prisoner held in civil confinement pursuant to a state law for sexually violent predators brought a petition for a writ of habeas corpus, seeking release. 531 U.S. at 253, 121 S.Ct. 727, 148 L.Ed.2d 734. A federal appellate court had required the trial court to conduct an evidentiary hearing on whether the conditions of Young's confinement rendered the state law punitive as it applied to him. *Young v. Weston* (C.A.9, 1999), 192 F.3d 870, 876. Reversing, the Supreme Court held that because the state law was civil in nature, see *In re Detention of Turay* (1999), 139 Wash.2d 379, 414, 986 P.2d 790, it could not be deemed punitive "as applied" to a single individual in violation of the Ex Post Facto Clause. *Young,* 531 U.S. at 267, 121 S.Ct. 727, 148 L.Ed.2d 734.

{¶ 43} As noted earlier, we have found consistently that R.C. Chapter 2950 is a civil, remedial statute. Pursuant to *Young,* it therefore cannot be deemed unconstitutional on ex post facto grounds. See id. See also *Steinmetz v. Comm. College Dist. No. 529 Bd. of Trustees* (1978), 68 Ill.App.3d 83, 86, 24 Ill.Dec. 604, 385 N.E.2d 745 ("the constitutional prohibition against Ex post facto laws concerns criminal matters solely and has no application to civil law"). We therefore reject Ferguson's ex post facto claim.

Judgment affirmed.

MOYER, C.J., and O'DONNELL and CUPP, JJ., concur.

PFEIFER, LUNDBERG STRATTON, and LANZINGER, JJ., dissent.

---

**LANZINGER, J., dissenting.**

{¶ 44} Because I maintain that the 2003 amendments to R.C. Chapter 2950 when applied retroactively violate the Ex Post Facto Clause of the United States Constitution and Section 10, Article I and Section 28, Article II of the Ohio Constitution, I respectfully dissent.

## R.C. Chapter 2950 Has Evolved from Remedial to Punitive

{¶ 45} Although the majority continues to rely on *State v. Cook* (1998), 83 Ohio St.3d 404, 409, 700 N.E.2d 570, the first case that considered retroactive application of R.C. 2950.09(B), R.C. Chapter 2950 has been amended. The simple registration process and notification procedures are now different from those considered in *Cook* and in *State v. Williams* (2000), 88 Ohio St.3d 513, 728 N.E.2d 342. R.C. Chapter 2950 has been transformed from remedial to punitive as I have previously argued:

{¶ 46} "The following comparisons show that the current laws are more complicated and restrictive than those at issue in *Williams* and *Cook*. First, the label 'sexual predator' is now permanent for adult offenders, R.C. 2950.07(B)(1), whereas previously, offenders had the possibility of having it removed. Former R.C. 2950.09(D), Am.Sub.H.B. No. 180, 146 Ohio Laws, Part II, 2560, 2621–2623. Second, registration duties are now more demanding and therefore are no longer comparable to the inconvenience of renewing a driver's license, as *Cook* had analogized. *Cook*, 83 Ohio St.3d at 418, 700 N.E.2d 570. Persons classified as sex offenders must now personally register with the sheriff of the county in which they reside, work, and go to school. R.C. 2950.04(A). Sexual predators must personally register with potentially three different sheriffs every 90 days, R.C. 2950.06(B)(1)(a), which is hardly comparable to the slight inconvenience of having one's driver's license renewed every four years. Third, community notification has expanded to the extent that any statements, information, photographs, or fingerprints that an offender is required to provide are public record and much of that material is now included in the sex-offender database maintained on the Internet by the attorney general. R.C. 2950.081. In *Cook*, we considered it significant that the information provided to sheriffs by sex offenders could be disseminated to only a restricted group of people. *Cook*, 83 Ohio St.3d at 422, 700 N.E.2d 570. Fourth, new restrictions have been added to R.C. Chapter 2950. Enacted initially as part of Sub.S.B. No. 5, 125th General Assembly, approved July 31, 2003, R.C. 2950.031 prohibits all classified sex offenders, not just those convicted of sex offenses against children, from residing within 1,000 feet of any school premises. And fifth, a sheriff is now permitted to request that the sex offender's landlord or the manager of the sex offender's residence verify that the sex offender currently resides at the registered address. R.C. 2950.111(A)(1). According to R.C. 2950.111(C), '[a] sheriff or designee of a sheriff is not limited in the number of requests that may be made under this section regarding any registration, provision of notice, or verification, or in the number of times that the sheriff or designee may attempt to confirm, in manners other than the manner provided in this section, that an offender * * * currently resides at the address in question.'

{¶ 47} "While protection of the public is the avowed goal of R.C. Chapter 2950, we cannot deny that severe obligations are imposed upon those classified as sex offenders. All sexual predators and most habitual sex offenders are expected, for the remainder of their lives, to register their residences and their employment with local sheriffs. Moreover, this information will be accessible to all. The stigma attached to sex offenders is significant, and the potential exists for ostracism and harassment, as the *Cook* court recognized. Id., 83 Ohio St.3d at 418, 700 N.E.2d 570. Therefore, I do not believe that we can continue to label these proceedings as civil in nature. These restraints on liberty are the

consequences of specific criminal convictions and should be recognized as part of the punishment that is imposed as a result of the offender's actions." *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 45–46 (Lanzinger, J., concurring in part and dissenting in part).

### The General Assembly's Expressed Intent

{¶ 48} The majority agrees that the residency restriction may not be applied retroactively, *Hyle v. Porter,* 117 Ohio St.3d 165, 2008-Ohio-542, 882 N.E.2d 899, but concludes that retroactive application of Ferguson's other challenged amendments does not violate the Constitution. Much is made of the General Assembly's intent: to protect the public from all sex offenders. But to overcome the presumption that a statute applies prospectively, a statute must "clearly proclaim" its retroactive application. *State v. Consilio,* 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, paragraph one of the syllabus.

{¶ 49} A new and unwarranted rule is announced today: Because the court has interpreted earlier statutes as permissibly retroactive (in *Cook* ), and the General Assembly "declined to override" the court's interpretation, the newly amended statute must also be retroactive. This is not the analysis we used most recently in *Hyle,* 117 Ohio St.3d 165, 2008-Ohio-542, 882 N.E.2d 899. In *Hyle,* retroactivity was found *not* to be expressed with respect to former R.C. 2950.031, 150 Ohio Laws, Part IV, 6558, 6657, one of the amendments made by S.B. 5. Id. at ¶ 24.

{¶ 50} We have explained that "[w]e do not address the question of constitutional retroactivity unless and until we determine that the General Assembly expressly made the statute retroactive." *Hyle,* 117 Ohio St.3d 165, 2008-Ohio-542, 882 N.E.2d 899, ¶ 9. Yet in determining that R.C. 2950.081, 150 Ohio Laws, Part IV, 6558, 6686–6687, and R.C. 2950.09, 150 Ohio Laws, Part IV, at 6687, are retroactive, the majority does not pinpoint any language used by the General Assembly within those sections that speaks about retroactivity.

{¶ 51} Even if I could be persuaded that there is an expressed intent to have these statutes applied retroactively, I cannot accept that the challenged amendments are "merely remedial" and do not impair vested, substantial rights. The General Assembly's stated intent—to protect the public—is not the only point to discuss in determining whether a statute is remedial. The punitive effect must be considered as well.

{¶ 52} To begin with, the classification and notification statutes are part of our *criminal* code. This placement suggests a punitive intent. See *Kansas v. Hendricks* (1997), 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501. We have also held that a sex offender's failure to register under R.C. 2950.06(F) is itself a criminal offense. *State v. Williams,* 114 Ohio St.3d 103, 2007-Ohio-3268, 868 N.E.2d 969, ¶ 1. We have acknowledged that the simple registration process and

notification procedures considered in *Cook* are now different. *Williams* at ¶ 9. And coming close to acknowledging the changed nature of the new statutory scheme, we stated, "While protection of the public is the avowed goal of R.C. Chapter 2950, we cannot deny *that additional obligations are now imposed* upon those classified as sex offenders." (Emphasis added.) Id.

{¶ 53} An offender's classification as a sexual predator is a direct consequence of the offender's criminal acts. We cannot say that registration duties are collateral to a criminal conviction—they exist only as a direct result of this type of conviction. As such, they are punitive. As Justice Stevens noted: "[A] sanction that (1) is imposed on everyone who commits a criminal offense, (2) is not imposed on anyone else, and (3) severely impairs a person's liberty is punishment." *Smith v. Doe* (2003), 538 U.S. 84, 113, 123 S.Ct. 1140, 155 L.Ed.2d 164 (Stevens, J., dissenting). Simply calling a statutory scheme "regulatory" does not make it so. No one except those convicted of a sex offense must register, is subject to classification and community notification, or is confined by residency restrictions pursuant to R.C. Chapter 2950.

### Retroactively Imposed Punishment Violates the Ex Post Facto Clause

{¶ 54} In the majority's view, if the law is remedial, it cannot be deemed unconstitutional on ex post facto grounds.

{¶ 55} The General Assembly's intent not to punish is nondispositive of whether a statute is remedial or punitive if the consequences of the statute are punitive. If the intention was to enact a regulatory scheme that is civil and nonpunitive, it must be examined further to see whether the statutory scheme is " 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.' " (Bracketed material sic.) *Hendricks,* 521 U.S. at 361, 117 S.Ct. 2072, 138 L.Ed.2d 501, quoting *United States v. Ward* (1980), 448 U.S. 242, 248–249, 100 S.Ct. 2636, 65 L.Ed.2d 742.

{¶ 56} The United States Supreme Court has suggested that the guidelines of *Kennedy v. Mendoza–Martinez* (1963), 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644, should be considered in determining the legislative intent as to the penal nature of a statute. *Smith,* 538 U.S. at 97, 123 S.Ct. 1140, 155 L.Ed.2d 164. These factors include whether "the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned." (Footnotes omitted.) *Mendoza–Martinez,* 372 U.S. at 168–169, 83 S.Ct. 554, 9 L.Ed.2d 644.

{¶ 57} Using the *Mendoza–Martinez* factors as a measure, I would hold R.C. Chapter 2950 punitive in effect. Through classification and registration, an affirmative disability is imposed. Through classification, lifetime reporting obligations are imposed, and registrants and their families are exposed to profound humiliation and community-wide ostracism.

{¶ 58} The registration and reporting provisions are comparable to conditions of supervised release or parole; the public notification, which places the registrant's face on a web page under the label "Registered Sex Offender," calls to mind shaming punishments once used to mark an offender as someone to be shunned. It is a past conviction alone that triggers all obligations. See *Mendoza–Martinez*, 372 U.S. at 169–170, 83 S.Ct. 554, 9 L.Ed.2d 644. Admittedly, S.B. 5 has a legitimate civil purpose: to promote public safety by alerting the public to potentially recidivist sex offenders in the community. But its scope notably exceeds this purpose.

{¶ 59} S.B. 5 applies to all convicted sex offenders, without regard to their future dangerousness. "Contrary to popular public opinion, the recidivism rate for sex crimes is no worse than the recidivism rate for other crimes. In fact, sex offense recidivism is extremely low compared to recidivism for other crimes. According to the Department of Justice's statistics of sex offender recidivism, 5.3 percent of sex offenders were rearrested for a sex offense within three years of their release. Forty-three percent of convicted sex offenders were arrested for all crimes during this same period, but the overwhelming majority of those arrests were for other non-sexual allegations." (Footnotes omitted.) Lester, Off to Elba! The Legitimacy of Sex Offender Residence and Employment Restrictions (2007), 40 Akron L.Rev. 339, 349.[7] The broad application of S.B. 5 also overlooks critical differences among those classified as sexual offenders. "Even adult sexual offenders are not the homogenous group assumed by legislatures. Many sex offenders do not suffer from sexual pathologies." Vitiello, Punishing Sex Offenders: When Good Intentions Go Bad (2008), 40 Ariz.St.L.J. 651, 677.

{¶ 60} The reporting requirements themselves are exorbitant: S.B. 5 requires sexual predators to engage in perpetual quarterly reporting by personally reporting to the sheriff of the county in which they reside, work, and go to school, even if their personal information has not changed. Former R.C. 2950.04(A) and 2950.06(B)(1), 150 Ohio Laws, Part IV, 6558, 6657–6661, 6673–6674. And meriting heaviest weight in my judgment, S.B. 5 makes no provision whatever for the possibility of rehabilitation. Offenders cannot shorten their registration or notification period, even on the clearest demonstration of rehabilitation or conclu-

---

7. Although the majority discounts the research done regarding the recidivism rate of sexual offenders, it is relevant for determining whether the scope of the legislation exceeds its civil purpose.

sive proof of physical incapacitation. Former R.C. 2550.07(B)(1), 150 Ohio Laws, Part IV, 6558, 6681–6682. Prior to S.B. 5, a sexual predator had the opportunity to remove that label. Former R.C. 2950.09(D), Am.Sub.H.B. No. 180, 146 Ohio Laws, Part II, 2560, 2621–2623. However plain it may be that a former sex offender currently poses no threat of recidivism, he will remain subject to long-term monitoring and inescapable humiliation.

{¶ 61} In a venerable case that considered the Ex Post Facto Clause, Justice Chase characterized four types of laws that violate that constitutional prohibition: "1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. *Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.* 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender. All these, and similar laws, are manifestly unjust and oppressive." (Emphasis added.) *Calder v. Bull* (1798), 3 U.S. 386, 390–391, 3 Dall. 386, 1 L.Ed. 648. To apply R.C. Chapter 2950 retroactively increases the punishment on a criminal defendant and, therefore, is incompatible with the prohibition against ex post facto laws.

### Conclusion

{¶ 62} I respectfully dissent and would reverse the judgment of the court of appeals by holding that when applied retroactively, S.B. 5 amendments to R.C. Chapter 2950 violate the Ex Post Facto Clause of the United States Constitution and Section 10, Article I and Section 28, Article II of the Ohio Constitution.

PFEIFER and LUNDBERG STRATTON, JJ., concur in the foregoing opinion.

---

William D. Mason, Cuyahoga County Prosecuting Attorney, and Pamela Bolton, Assistant Prosecuting Attorney, for appellee.

Robert L. Tobik, Cuyahoga County Public Defender, and John T. Martin and Cullen Sweeney, Assistant Public Defenders, for appellant.

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Assistant Prosecuting Attorney, urging affirmance for amicus curiae, Franklin County Prosecuting Attorney.