**The City of CLEVELAND, Appellant,**

v.

**The STATE of Ohio, Appellee.**

[Cite as *Cleveland v. State*, 185 Ohio App.3d 59, 2009-Ohio-5968.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 92663.

Decided Nov. 12, 2009.

Robert J. Triozzi, Cleveland Director of Law, and Gary S. Singletary, Assistant Director of Law, for appellant.

Richard A. Cordray, Attorney General, Pearl M. Chin and Craig A. Calcaterra, Assistant Attorneys General, and Benjamin Mizer, Solicitor General, for appellee.

Lydy & Moan Ltd., Frederick E. Kalmbach, and Daniel T. Ellis; Bingham McCutchen L.L.P., William F. Abrams, and Karen Lu; Mitchell H. Banchefsky and Stephen J. Smith; David Cannon and Elizabeth Rumsey; Ulmer & Berne L.L.P., and James N. Kline; and Max Rothal, for amici curiae.

COLLEEN CONWAY COONEY, Administrative Judge.

{¶ 1} Plaintiff-appellant, the city of Cleveland, appeals the trial court's grant of summary judgment to defendant-appellee, the state of Ohio, on the city's declaratory-judgment action. Finding merit to the appeal, we reverse the trial court's grant of summary judgment to the state and direct that the trial court enter summary judgment for the city, thereby declaring R.C. 9.68 unconstitutional.

{¶ 2} This case arose in March 2007, when the city filed a complaint for declaratory judgment challenging the constitutionality of R.C. 9.68. The National Rifle Association ("NRA") and Ohioans for Concealed Carry ("OCC") moved to intervene as defendants and to bring cross-claims against the city, alleging that local firearm ordinances were unconstitutional.

{¶ 3} In July 2007, both the city and the state moved for summary judgment. The trial court denied the NRA's and OCC's motions to intervene, denied the city's motion for summary judgment, and granted the state's motion for summary judgment.[1] The trial court found that based upon the Ohio Supreme Court's holding in *Ohioans for Concealed Carry v. Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, R.C. 9.68 is constitutional and does not violate the Home Rule Amendment of the Ohio Constitution. The court found that R.C. 9.68 was a "general law that is part of a comprehensive statewide legislative enactment." It also found that Sub.H.B. No. 347 did not violate the single-subject rule and that the General Assembly did not abuse its legislative power in enacting the law.

{¶ 4} The city appeals, raising three assignments of error for our review.

### Factual and Procedural Background

{¶ 5} In December 2006, the Ohio General Assembly passed Sub.H.B. No. 347, entitled "Firearms–Conceal Carry Licenses." The bill addressed 23 statutes, amending 22 concealed carry and concurrent penalty provisions and enacting a new statute, R.C. 9.68, which asserted that only federal or state regulations could limit Ohioans' individual right to bear arms. But at the time, the city had already enacted several ordinances regulating firearms, including Cleveland Codified Ordinance ("C.C.O.") 627.08, possession of firearms by minors; C.C.O. 627.09, possessing deadly weapons on public property; C.C.O. 627.10, possessing certain weapons at or about public places; C.C.O. 627A.02, access to firearms, prohibiting children access to firearms; C.C.O. 628.03, unlawful conduct, prohibiting possession and sale of assault weapons; and C.C.O. 674.05, registration of handguns. The Ohio Supreme Court had upheld the constitutionality of the ordinance

---

1. The NRA and OCC appealed the denial of their motion to intervene in appeal No. 92735.

dealing with assault weapons. *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 616 N.E.2d 163.

## Law and Analysis

{¶ 6} In its first assignment of error, the city claims that the trial court erred in denying its motion for summary judgment and granting summary judgment for the state because R.C. 9.68 violates the Home Rule Amendment of the Ohio Constitution.

{¶ 7} We must first observe the strong presumption that all statutes are constitutional. *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 41, citing *State v. Carswell*, 114 Ohio St.3d 210, 2007-Ohio-3723, 871 N.E.2d 547, ¶ 6, citing *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 538, 706 N.E.2d 323. Thus, the city bears the burden to demonstrate beyond a reasonable doubt that R.C. 9.68 is unconstitutional. Id., citing *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 12; *State v. Williams* (2000), 88 Ohio St.3d 513, 521, 728 N.E.2d 342.

{¶ 8} R.C. 9.68 states:

(A) The individual right to keep and bear arms, being a fundamental individual right that predates the United States Constitution and Ohio Constitution, and being a constitutionally protected right in every part of Ohio, the general assembly finds the need to provide uniform laws throughout the state regulating the ownership, possession, purchase, other acquisition, transport, storage, carrying, sale, or other transfer of firearms, their components, and their ammunition. Except as specifically provided by the United States Constitution, Ohio Constitution, state law, or federal law, a person, without further license, permission, restriction, delay, or process, may own, possess, purchase, sell, transfer, transport, store, or keep any firearm, part of a firearm, its components, and its ammunition.

(B) In addition to any other relief provided, the court shall award costs and reasonable attorney fees to any person, group, or entity that prevails in a challenge to an ordinance, rule, or regulation as being in conflict with this section.

## A. The Home Rule Amendment and "General Laws"

{¶ 9} Section 3, Article XVIII of the Ohio Constitution is known as the Home Rule Amendment and states as follows:

Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.

{¶ 10} In short, municipalities may exercise police and other powers so long as they do not conflict with "general laws." Here, the city seeks a declaratory judgment that R.C. 9.68 is unconstitutional because it is not a general law and attempts to curtail the city's police powers.[2] The city argues that with Sub.H.B. No. 347 and its new provision R.C. 9.68, the state did not enact a comprehensive scheme to regulate firearms. The city concedes that Ohio maintains a comprehensive scheme to regulate the *concealed carrying* of firearms but not to regulate firearms altogether. The state counters that reading R.C. 9.68 together with Sub.H.B. No. 347 demonstrates a comprehensive scheme to regulate firearms. We find the city's argument more persuasive.

{¶ 11} We begin our analysis with a definition of the term "general law." A general law must (1) be part of "a statewide and comprehensive legislative enactment," (2) "apply to all parts of the state alike and operate uniformly throughout the state," (3) establish "police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations," and (4) "prescribe a rule of conduct upon citizens generally." *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, syllabus ("the *Canton* test").

{¶ 12} In *Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, the Ohio Supreme Court recently considered the OCC's home-rule challenge to the city of Clyde's ordinance banning deadly weapons in city parks, alleging that it conflicted with a general law created in H.B. No. 12, which created a licensing system for the carrying of concealed handguns. In that case, the Ohio Supreme Court examined R.C. 2923.126(A), which provides that a licensed handgun owner "may carry a concealed handgun anywhere in this state," except as provided in R.C. 2923.126(B) and (C). The bill contained an uncodified section stating, "[N]o municipal corporation may adopt or continue in existence any ordinance * * * that attempts to restrict the places where a person possessing a valid license to carry a concealed handgun may carry a handgun concealed." H.B. No. 12, Section 9, 150 Ohio Laws, Part II, 3390; *Clyde* at ¶ 17. Soon after, the city of Clyde enacted an ordinance forbidding individuals from possessing deadly weapons in city parks, regardless of whether the individual had a permit to carry a concealed weapon. The Ohio Supreme Court invalidated the Clyde ordinance, holding that although it was an exercise of Clyde's police powers, it conflicted with R.C. 2923.126(A), a general law.

{¶ 13} In reaching its conclusion, the *Clyde* court reasoned first that R.C. 2923.126 was part of a comprehensive and statewide legislative enactment be-

---

**2.** We note that the city challenges the constitutionality of R.C. 9.68 without determining whether it conflicts with any specific city ordinance.

cause along with R.C. 2923.125, it "create[d] a right subject to specifically enumerated exceptions and, where selected by an owner, exceptions based on private property and employment. The General Assembly, in crafting the statute, indicated that it 'wish[ed] to ensure uniformity throughout the state regarding * * * the authority granted to a person holding a license of that nature.'" Id. at ¶ 42, quoting Am.Sub.H.B. No. 12, Section 9, 150 Ohio Laws, Part II, 3390. Next, it held that the statute applied uniformly statewide, because its rules and exceptions applied evenly to all municipalities of the state. Third, it was an exercise of the state's police power because it "'relates to public health and safety as well as the general welfare of the public.'" Id. at ¶ 35, quoting *Marich v. Bob Bennett Constr. Co.*, 116 Ohio St.3d 553, 2008-Ohio-92, 880 N.E.2d 906, ¶ 14.

{¶ 14} As to the third prong, the *Clyde* court explained:

The statute * * * does more than merely prevent municipalities from enacting inconsistent handgun laws. It provides a program to foster proper, legal handgun ownership in this state. The statute therefore represents both an exercise of the state's police power and an attempt to limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations.

*Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, ¶ 50.

{¶ 15} Finally, it prescribed a rule of conduct for citizens because it required citizens who sought to carry concealed weapons to comply with the licensing procedure.

{¶ 16} Notably, soon after OCC brought its challenge to the Clyde ordinance and before the Ohio Supreme Court's decision in *Clyde*, the General Assembly enacted Sub.H.B. No. 347, which included R.C. 9.68. *Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, ¶ 20. The *Clyde* court did not hold that R.C. 9.68 was a general law,[3] though it acknowledged that R.C. 9.68 demonstrated the General Assembly's intent to occupy the field of handgun possession in Ohio. It cautioned that "'[a] statement by the General Assembly of its intent to preempt a field of legislation is a statement of legislative intent' that may be considered in a home-rule analysis but does not dispose of the issue." Id. at ¶ 29, quoting *Am. Fin. Servs. Assn. v. Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 31 ("*AFSA*").

---

3. We note that the *Clyde* court impliedly upheld R.C. 9.68 as it relates to handguns, albeit in dicta, when it stated, "Simply put, the General Assembly, by enacting R.C. 9.68(A), gave persons in Ohio the right to carry a handgun unless federal or state law prohibits them from doing so. A municipal ordinance cannot infringe on that broad statutory right." Id. at ¶ 20. But in *Clyde*, neither party had challenged the constitutionality of R.C. 9.68 and its broad preemption of any municipal ordinance.

{¶ 17} The city's constitutional challenge to R.C. 9.68 is not directed at the state's concealed-carry laws. Instead, it challenges the state's attempt to use R.C. 9.68 as a mechanism to preempt all local ordinances, notwithstanding the absence of conflict between the city's local ordinances and a corresponding general law enacted by the state.

{¶ 18} To evaluate whether R.C. 9.68 is a general law, we consider it in the context of Sub.H.B. No. 347. See, e.g., *AFSA* (considering R.C. 1.63 in the context of Sub.H.B. No. 386 in a home-rule challenge).

1. Statewide and Comprehensive Legislative Enactment

{¶ 19} Turning to the first prong of the *Canton* test, we conclude that R.C. 9.68 is not part of a statewide and comprehensive legislative enactment. Although Sub.H.B. No. 347 pertains to a matter of statewide concern, it is not comprehensive, but leaves a great deal of firearm activity unregulated. Sub.H.B. No. 347 includes amendments that (1) regulate various aspects of concealed handgun possession and firearms training programs, (2) broaden the definition of "peace officers," enhancing statutory penalties for assault, felonious assault, and aggravated assault, (3) enhance the statutory penalty for theft of a firearm, (4) exempt certain individuals from the prohibition against possession of firearms in liquor permit premises, (5) modify the prohibitions against illegal conveyances or possession of deadly weapons or dangerous ordnances in school safety zones and courthouses, and (6) modify the rules regarding transport of loaded weapons in motor vehicles.[4]

{¶ 20} But Sub.H.B. No. 347 leaves unregulated (1) the discharge of firearms, (2) the possession and sale of assault weapons, (3) the open carrying of firearms on public property and public places, (4) the possession and use of firearms by minors, (5) the registration of handguns as required by the city, (6) the registrations and licensure of firearms dealers, (7) permit or licensing requirements before an individual purchases a handgun, and (8) background checks before the purchase or transfer of firearms.

{¶ 21} Even the "intent to preempt" language contained in R.C. 9.68 fails to cover a broad range of firearm activity. It refers to the rights to "own, possess, purchase, sell, transfer, transport, store, or keep any firearm," but does not address discharging firearms or openly carrying them.

{¶ 22} The instant case is similar to *Canton,* 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, in which the Ohio Supreme Court struck down R.C. 3781.184, a

---

4. Sub.H.B. No. 347 describes itself as revising laws regarding possession of concealed handguns, broadening the definition of "peace officers," exempting certain individuals from firearms training programs, increasing the penalty for theft of a firearm in certain cases, and augmenting individual rights to own and use firearms.

statute barring local governments from prohibiting the location of certain manufactured homes in areas zoned for single-family homes. The *Canton* court held that the statute was not part of a statewide and comprehensive zoning plan because the law was part of a chapter varying widely in topic and lacked rules regarding zoning plans. Id. at ¶ 23–24.

{¶ 23} In contrast, in *AFSA,* 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, the Ohio Supreme Court held that Sub.H.B. No. 386, which regulated lending practices, was a comprehensive law. It reasoned that Sub.H.B. No. 386(1) "incorporated parts of the Home Ownership and Equity Protection Act of 1994, * * * the federal predatory-lending law," into the Ohio Revised Code at R.C. 1349.25 through 1349.37, (2) defined covered loans through R.C. 1349.25(D), and (3) "authorized the state to '*solely* * * * regulate the business of originating, granting, servicing, and collecting loans and other forms of credit in the state and the manner in which any such business is conducted, * * * in lieu of all other regulation of such activities by any municipal corporation or other political subdivision,' R.C. 1.63(A). (Emphasis added.)" Id. at ¶ 33.

2. Uniform Operation throughout the State

{¶ 24} It is undisputed that R.C. 9.68 meets the second prong of *Canton.* It applies to all parts of the state and operates uniformly to every individual.

3. Establishing Police Regulations Rather than Granting or Limiting Legislative Power

{¶ 25} Under the third prong of the *Canton* test, a general law must set forth police, sanitary, or similar regulations rather than simply granting or limiting legislative power. In the instant case, R.C. 9.68 does not establish police regulations but instead limits the legislative power of municipal corporations, thus failing to meet the third prong of the *Canton* test. Our reasoning on this prong closely follows that of the first prong of *Canton.* With R.C. 9.68, the state attempts to curtail the city's home-rule police powers without enacting legislation to remedy the purported ill of a confusing "patchwork" of municipal regulations involving firearms. As outlined above, R.C. 9.68 and Sub.H.B. No. 347, along with existing state and federal firearm regulations, leave many gaps. In her concurring opinion in *Cincinnati v. Baskin,* 112 Ohio St.3d 279, 2006-Ohio-6422, 859 N.E.2d 514,[5] Justice O'Connor stated:

Ohio legislation currently touches on only a handful of areas in regard to firearms: Prohibition on ownership of certain items, prohibition on possession of firearms by certain classes of persons, limitations on the discharge and transport of firearms, limits on places where a firearm may be discharged or

---

**5.** *Baskin* was decided the same year Sub.H.B. No. 347 was enacted.

possessed, sentencing rules and specifications applied when a firearm is used or possessed during commission of a crime, limitations on interstate sales, concealed-firearm provisions, and various laws related to things such as immunity for firearm manufacturers.

\* \* \*

Although this may appear to be a broad array of firearms regulation, in comparison to other states, Ohio has barely touched upon the subject of firearm possession, use, transfer, and ownership.

(Footnotes omitted.)  Id. at ¶ 52.

{¶ 26} As outlined above, Sub.H.B. No. 347 did little to fill in the gaps that Justice O'Connor recognized.  Thus, R.C. 9.68 fails the third prong of *Canton*.

4.  Prescription of a Rule of Conduct for Citizens

{¶ 27} Finally, R.C. 9.68 does not prescribe a rule of conduct upon citizens generally.  Like the challenged laws in *Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, *Linndale v. State* (1999), 85 Ohio St.3d 52, 706 N.E.2d 1227, and *Youngstown v. Evans* (1929), 121 Ohio St. 342, 168 N.E. 844, R.C. 9.68 is " 'not a general law in the sense of prescribing a rule of conduct upon citizens generally.  It is a limitation upon law making by municipal legislative bodies.' " *Canton* at ¶ 34, quoting *Youngstown* at 345, 168 N.E. 844.  We distinguish this case from *AFSA*, which held that Sub.H.B. No. 386, a provision similar to R.C. 9.68 and Sub.H.B. No. 347, prescribed a rule of conduct upon citizens because Sub.H.B. No. 386 "establishe[d] rules of conduct for all lenders in Ohio and also provide[d] remedies for all consumers subject to predatory loans if lenders violate[d] the state statute."  *AFSA*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, at ¶ 36.  Instead, the instant case is analogous to *Linndale* and *Youngstown*.

{¶ 28} Accordingly, R.C. 9.68 fails to satisfy the general-law test, and we conclude that it is not a general law.

{¶ 29} Because R.C. 9.68 unconstitutionally attempts to limit municipalities' home-rule police powers, we find that the trial court erred in denying the city's motion for summary judgment.

{¶ 30} The first assignment of error is sustained.

### General Assembly's Abuse of Legislative Power

{¶ 31} In the second assignment of error, the city claims that the trial court erred in finding that the General Assembly did not abuse its legislative power in enacting R.C. 9.68.

{¶ 32} Section 32, Article II of the Ohio Constitution precludes the legislature from violating the separation of powers by exercising judicial powers. In *State v. Hochhausler* (1996), 76 Ohio St.3d 455, 463–464, 668 N.E.2d 457, the Ohio Supreme Court explained:

> The principle of separation of powers is embedded in the constitutional framework of our state government. The Ohio Constitution applies the principle in defining the nature and scope of powers designated to the three branches of the government. *State v. Warner* (1990), 55 Ohio St.3d 31, 43–44, 564 N.E.2d 18, 31. See *State v. Harmon* (1877), 31 Ohio St. 250, 258. It is inherent in our theory of government " 'that each of the three grand divisions of the government, must be protected from the encroachments of the others, so far that its integrity and independence may be preserved. * * * ' " *S. Euclid v. Jemison* (1986), 28 Ohio St.3d 157, 159, 28 OBR 250, 252, 503 N.E.2d 136, 138, quoting *Fairview v. Giffee* (1905), 73 Ohio St. 183, 187, 76 N.E. 865, 866. * * *
>
> We have held that "[t]he administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers." *State ex rel. Johnston v. Taulbee* (1981), 66 Ohio St.2d 417, 20 O.O.3d 361, 423 N.E.2d 80, paragraph one of the syllabus. We have also held that "[c]ourts of general jurisdiction, whether named in the Constitution or established pursuant to the provisions thereof, possess all powers necessary to secure and safeguard the free and untrammeled exercise of their judicial functions and cannot be directed, controlled or impeded therein by other branches of the government." * * * Id. at paragraph two of the syllabus.
>
> The legislative branch has no right to limit the inherent powers of the judicial branch of the government. *Hale v. State* (1896), 55 Ohio St. 210, 212–213, 45 N.E. 199, 200.

{¶ 33} R.C. 9.68(B) is offensive for two reasons. First, it violates the separation of powers by usurping judicial discretion in the award of attorney fees and costs. R.C. 9.68(B) mandates that courts award costs and "reasonable attorney fees to any person, group, or entity that prevails in a challenge to an ordinance, rule, or regulation as being in conflict with this section."

{¶ 34} Second, the General Assembly invites unwarranted litigation and attempts to coerce municipalities into repealing or refusing to enforce longstanding local firearm regulations using the significant burden of financial litigation penalties.[6] The conflict analysis is complex, as even the Ohio Supreme Court has

---

6. The Ohio Supreme Court recently upheld the state's valid interest in preserving the financial soundness of its political subdivisions. See *Oliver v. Cleveland Indians Baseball Co. Ltd. Partnership*, 123 Ohio St.3d 278, 2009-Ohio-5030, 915 N.E.2d 1205, ¶ 10.

recognized. *Baskin,* 112 Ohio St.3d 279, 2006-Ohio-6422, 859 N.E.2d 514, ¶ 31 (O'Connor, J., concurring in judgment only). Therefore, municipalities face a grave challenge in complying with this law—they must negotiate the complex conflict analysis while avoiding a minefield of potential litigation that they would have to finance.

{¶ 35} Based on the foregoing, we find that R.C. 9.68 violates the separation-of-powers doctrine espoused by the Ohio Constitution. Accordingly, the second assignment of error is sustained.

### Single–Subject Rule

{¶ 36} In the third assignment of error, the city further asserts that Sub.H.B. No. 347 and R.C. 9.68 violate the one-subject rule. We need not reach this issue because our disposition of the first two assignments of error renders this argument moot.

{¶ 37} The judgment is reversed. The cause is remanded for entry of summary judgment for the city.

Judgment reversed
and cause remanded.

STEWART and DYKE, JJ., concur in judgment only.

