{¶ 47} Although I concur in part with the majority's decision, I dissent with respect to the majority's resolution of appellant's constitutional challenge of Ohio's version of The Adam Walsh Child Protection and Safety Act of 2006 ("AWA") being applied to him. For the reasons that follow, I find merit to appellant's third assignment of error, where he asserts that the retroactive application of the AWA is unconstitutional as applied to him.
 {¶ 48} In this case, the trial court determined, after hearing evidence, that appellant was not a sexual predator and, therefore, not subject to cumbersome *Page 21 
lifetime registration and reporting requirements. However, at his sentencing, the trial court informed appellant that amendments to the law that would take effect January 1, 2008 would apply to him. The amendments would simply negate the prior judicial determination (i.e., that defendant did not likely pose a threat of committing sexually oriented crimes in the future) and automatically reclassify appellant, based upon the fact of his conviction, to a Tier III offender.
 {¶ 49} A Tier III offender is subject to extensive lifetime registration and reporting requirements as well as residency restrictions. It is readily apparent that the reclassification of appellant from a sexually oriented offender to a Tier III offender clearly created new obligations, imposed more duties, or attached a new disability, in respect to appellant's conditions for being convicted of a sexually oriented offense.
I. Fiscal Pressure on States to Implement Provisions of the AWA.
 {¶ 50} Congress enacted The Adam Walsh Child Protection and Safety Act of 2006 (the "Walsh Act") on July 27, 2006. 42 U.S.C. § 16901 (2006). Title I of the Walsh Act contains the Sex Offender Registration and Notification Act ("SORNA"). 42 U.S.C. § 16901. The Walsh Act provides that any jurisdictions, including the states, that do not substantially implement the Walsh Act, with its registration and notification requirements, into their respective laws by July 27, 2009, "shall not receive 10 percent of the funds that would otherwise be allocated *Page 22 
for that fiscal year to the jurisdiction under subpart 1 of part E of title I of the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. 3750 et seq.)." 42 USCS § 16925(a). In short, non-complying jurisdictions will lose ten percent of their current federal funding. Id.
A. Ohio's Compliance.
 {¶ 51} In compliance with the federal mandate, Ohio's legislature enacted the AWA effective January 1, 2008. See S.B. 10. Section 3.[5]
The Sex Offender Registration and Notification Provisions ("SORN") are set forth in Chapter 2950, et seq. of the Ohio Revised Code and amended the former version of the law that was commonly referred to as "Megan's Law." See former Ohio Revised Code Chapter 2950, et seq. The revisions included, inter alia, the AWA classification system whereby offenders are automatically classified into one of three tiers, depending solely upon the fact that they were convicted of one of many enumerated offenses. *Page 23 
 {¶ 52} In March 2007, the Ohio Criminal Sentencing Commission noted a number of constitutional concerns that would arise in the event that the General Assembly opted to adopt the AWA provisionsretroactively. See Ohio Criminal Sentencing Commission's memo to Adam Walsh Act Study Committee, Re: Implementation of the Adam Walsh Act dated March 23, 2007 (hereafter "Commission Memo"). Among them were potential violations of the protections against double jeopardy and ex post facto legislation, including the Retroactivity Clause of the Ohio Constitution, and a violation of the separation of powers doctrine.
1. Changes to Ohio's SORN[6] law.
 {¶ 53} Under Megan's Law, courts were directed to classify offenders among three categories: sexually oriented offenders, habitual sexual offenders, and sexual predators. Subject to limited circumstances, [7]
Ohio courts could not classify anyone a sexual predator, subjecting them to lifetime registration *Page 24 
requirements, without first holding a hearing and determining by clear and convincing evidence that he or she was likely to engage in one or more sexually oriented offenses in the future. See former R.C. 2950.09.
 {¶ 54} Under Megan's Law, the sexually oriented offender label attached automatically. State v. Hayden, 96 Ohio St.3d 211,2002-Ohio-4169, paragraph two of the syllabus. That label, although automatic, imposed the least restrictions in terms of both duration and frequency of registration. Former R.C. 2950.07(B)(3) (requiring annual verification of home address for a period of 10 years). Habitual sexual offenders were subject to annual registration for a period of 20 years, while sexual predators had to register every 90 days for life. Former R.C. 2950.07(B)(1) and (2); former R.C. 2950.06(B)(1) and (2); former R.C. 2950.04(C)(2).
 {¶ 55} Under Megan's Law, the state bore the burden of proving, by clear and convincing evidence, that an offender was likely to commit a sexually oriented offense in the future. Megan's Law enumerated various factors for the court to consider when assessing whether the sexual predator label was appropriate. Former R.C. 2950.09(B)(2)(a) through (j).[8] *Page 25 
 {¶ 56} One significant change under the AWA is the automatic application of the applicable tier label, including Tier III, based solely upon the fact of conviction. A Tier III offender is relegated to a lifetime of reporting and notification requirements, including inperson registration every 90 days with potentially three different sheriffs.[9] This is true regardless of his or her actual propensity to reoffend because no consideration is given to the particular factual circumstances relevant to the offender. The AWA, inter alia, imposes further residency restrictions, increases the registration and notification requirements, and also increases the penalties for their violation.
 {¶ 57} Consequently, it becomes the legislature, rather then the judiciary, that determines the appropriate classification for all offenders. In appellant's case, the legislature retroactively usurped the function formerly discharged by the court, with the effect of completely negating a prior judicial determination and its exercise of discretion.
 {¶ 58} The AWA provides for a Tier III label for those convicted of certain "sexually oriented offenses," but includes among them convictions for an offense that lacks any sexual component or motivation. E.g., R.C. 2950.01(G)(1)(f) *Page 26 
(Tier III offenders include those convicted of kidnapping in "violation of division (B) of section 2905.01 of the Revised Code when the victim of the offense is under eighteen years of age and the offender is not a parent of the victim of the offense.")[10]
 II. Appellant's Constitutional Challenges.
 {¶ 59} In this case, appellant maintains that the application of the AWA to him is unconstitutional, in violation of the Ex Post Facto Clause of the United States Constitution and the Retroactivity Clause of the Ohio Constitution. Accordingly, this analysis is correspondingly limited to the issues raised by appellant.
 {¶ 60} As set forth previously, the trial court conducted an evidentiary hearing at which it determined that appellant was not likely to commit sexually oriented offenses in the future. As such, the least restrictive label of sexually oriented offender was imposed upon him. At sentencing, appellant was informed *Page 27 
that he would soon be reclassified, by operation of statutory amendments, as a Tier III offender. No one can seriously dispute that the automatic reclassification would impose greater duties, obligations, and restrictions upon appellant than were deemed necessary by a prior judicial determination.
A. Ohio Supreme Court has Yet to Address Whether the RetroactiveApplication of the AWA SORN Provisions Violate Either the RetroactivityClause of the Ohio Constitution or the Ex Post Facto Clause of theUnited States Constitution.
 {¶ 61} While the Ohio Supreme Court has upheld various versions of the law, it has yet to address the constitutional challenges appellant now asserts in relation to the AWA. While the majority predicts that the Ohio Supreme Court would uphold the constitutionality of the AWA based upon prior decisions addressing former versions of the statute, the provisions of the AWA now in place significantly differ from those versions of the law that the Ohio Supreme Court has previously addressed. E.g., State v. Cook, (1998), 83 Ohio St.3d 404; State v.Hayden (2002), 96 Ohio St.3d 211; State v. Wilson, 113 Ohio St.3d 382,2007-Ohio-2202; State v. Ferguson, 120 Ohio St.3d 7, 2008-Ohio-4824. Also, the Ohio Supreme Court has become increasingly divided over the constitutionality of the statutory provisions as they have been progressively amended. Id.
 {¶ 62} In Cook, the Ohio Supreme Court reviewed the version of R.C. Chapter 2950, et seq., which became effective July 1, 1997. InCook, the Court unanimously rejected constitutional challenges that alleged violations of the Ex *Page 28 
Post Facto Clause of the United States Constitution and the Retroactivity Clause of the Ohio Constitution. Cook, supra.
 {¶ 63} In rejecting the challenge as being in violation of the Retroactivity Clause, the Court in Cook stated that many of the law's requirements were "directed towards officials rather than offenders"; the registration requirements were "`de minimis' procedural requirements that are necessary to achieve the goals of R.C. Chapter 2950"[11]; the "`harsh consequences [of] classification and community notification *** come not as *** a direct societal consequence of [the offender's] past actions.'"[12]; and the community notification involved the dissemination of public information. Id. at 411-414. Ultimately, the Court concluded the retroactive application did not affect any substantive rights. Id.
 {¶ 64} In reference to the Ex Post Facto challenge, the Court inCook found the legislature intended to create a remedial, not punitive, statute. Id. at 417. The Court based this finding on the following: "The General Assembly's purpose behind R.C. Chapter 2950 is to promote public safety and bolster the public's confidence in Ohio's criminal and mental health systems"; registration served the remedial purposes of protecting the public where the classification of the offender was determined by a court of law, and offenders were required to *Page 29 
register with the sheriff's office in the county where they reside; the legislation was narrowly tailored because "the notification provisions apply automatically only to sexual predators [who are only labeled after an evidentiary hearing proving their likelihood to reoffend by clear and convincing evidence] or, at the court's discretion, to habitual sex offenders." Id.
 {¶ 65} The AWA's amendments to the SORN law eliminated most of the protections highlighted by the Court's analysis in Cook.
 {¶ 66} The Court in Cook proceeded to find that former Chapter 2950 was not punitive in effect. Id. at 418, applying guideposts ofKennedy v. Mendoza-Martinez (1963), 372 U.S. 144.[13] In making this finding, the court reasoned: "The act of registration was a deminimis administrative requirement that was comparable to renewing a drivers' license and did not restrain the offender in any way; the burden of dissemination of information was placed on law enforcement; dissemination of, and public access to, public information to promote public protection is not historically viewed as punishment; the statutory provisions neither seek vengeance nor retribution but have the remedial purpose *Page 30 
of public protection; punishment for failure to register flows from a new violation of the statute rather than the past sex offense and violation of the registration statutes was already a crime; the restrictions or requirements were not excessive in relation to the purpose of protecting the public where "sexual predators, classified as such by a court of law have the opportunity to submit evidence to prove that their label is no longer justified and thereby have the label and its obligations removed"[14] and the frequency and duration of registration were "commensurate with the level of recidivism and dangerousness of these respective classifications."
 {¶ 67} Thus, the Ohio Supreme Court in Cook determined that the statutory provisions did not violate the Ex Post Facto Clause of the United States Constitution "because its provisions serve the remedial purpose of protecting the public." Id.
 {¶ 68} Again, the revisions to the law affected by the enactment of the AWA removed several bases upon which the Court in Cook relied in resolving the constitutional issues before it.
 {¶ 69} The legislature has amended Chapter 2950 since Cook, and the Ohio Supreme Court has continued to narrowly reject challenges to its *Page 31 
constitutionality, including those involving the Ex Post Facto Clause and the Retroactivity Clause. E.g., State v. Hayden, 96 Ohio St.3d 211,2002-Ohio-4169; State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, dissent at ¶ 43-46 (three justices dissenting from majority's finding that classification hearings are civil in nature); State v.Ferguson, 120 Ohio St.3d 7, 2008-Ohio-4824 (finding version of Chapter 2950, that became effective July 31, 2003, did not violate Retroactivity Clause of the Ohio Constitution or the Ex Post Facto Clause of the United States Constitution).[15]
 {¶ 70} In March 2007, the Ohio Sentencing Commission expressed concerns to the Adam Walsh Act Study Committee about applying the AWA's SORN law retroactively and indicated it was "obvious that the AWA's application to Ohio troubled not only the Commission's defense attorneys, but also its judges, prosecutors, and victims' representatives." Commission Memo at p. 1.
 {¶ 71} Of concern was that the new provisions of the AWA deviated from prior versions of the law by tying the registration and notification provisions directly to the offense and removing judicial determinations. The Ohio Sentencing Commission repeatedly observed that the AWA is not the same law *Page 32 
that was analyzed and upheld by the Ohio Supreme Court in Cook.
Id. at pp. 3-4.
 {¶ 72} After comparing the provisions of the AWA to the prior versions of the law that have been held to be constitutional, I would find that the retroactive application of it to appellant violates both the Retroactivity Clause of the Ohio Constitution and the Ex Post Facto Clause of the United States Constitution.
B. Retroactivity Clause of the Ohio Constitution.
 {¶ 73} Art. II, Section 28 of the Ohio Constitution provides: "The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts, but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties, and officers, by curing omissions, defects, and errors, in instruments and proceedings, arising out of their want of conformity with the laws of this state."
 {¶ 74} A retroactive statute "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." Cincinnati v. Seasongood (1889),46 Ohio St. 296, 303, 21 N.E. 630.
 {¶ 75} "[T]he pertinent distinction between an ex post facto law and a retroactive one is that ex post facto laws include statutes which increase the punishment of a prior criminal act, whereas retroactive laws include statutes *Page 33 
which `*** [attach] a new disability in respect to pasttransactions ***.'" (Emphasis added.) State ex rel. Michaels v.Morse (1956), 165 Ohio St. 599, 604 [60 O.O. 531]. "Retroactive laws are therefore a larger category than ex post facto laws, and comprise statutes imposing `disabilities' as well as those imposing `punishments.'" State ex rel. Corrigan v. Barnes (1982),3 Ohio App.3d 40, 44. "A statute is retroactive if it penalizes conduct that occurred before its enactment." State v. Williams, 103 Ohio St. 3d 112, 113,2004-Ohio-4747.
 {¶ 76} Here, a trial court conducted an evidentiary hearing and made a factual determination that appellant was not likely to commit sexually oriented offenses in the future. Appellant was labeled a sexually oriented offender under Megan's Law, subject to annual reporting requirements for a period of 10 years. Upon reclassification, appellant became a Tier III offender, subject to, inter alia, residency restrictions, increased reporting and registration requirements every 90 days for lifetime. It is a matter of fact that appellant's reclassification imposes new duties, obligations, and restrictions upon him.
 {¶ 77} The majority concludes that the AWA provisions do not violate the Retroactivity Clause because they are both civil and remedial in nature. The test, as set forth by the majority, is to determine: (1) whether the legislature intended the statute to be punitive or remedial and, if so, (2) whether the statute has such a punitive effect that it negates its remedial intent. Cook, supra at 418. *Page 34 
 {¶ 78} The legislature stated its intentions in R.C. 2950.02, which include declarations "to protect the safety and general welfare of the people of this state." R.C. 2950.02(B). And "[t]he general assembly further declares that it is the policy of this state to require the exchange in accordance with this chapter of relevant information about sex offenders and child-victim offenders among public agencies and officials and to authorize the release in accordance with this chapter of necessary and relevant information about sex offenders and child-victim offenders to members of the general public as a means of assuring public protection and that the exchange or release of that information is not punitive." Id.
 {¶ 79} I agree with the majority that the Ohio Supreme Court has found similar legislative declarations sufficient evidence of a remedial intent, which conclusion finds support in United States Supreme Court jurisprudence. Cook, supra; see, also, Smith v. Doe (2003), 538 U.S. 84,123 S.Ct.1140 (finding Alaska's version of Megan's Law did not violate Ex Post Facto Clause of United States Constitution).
 {¶ 80} The next inquiry is whether the intended remedial and civil provisions are nonetheless punitive in effect. In Smith, the United States Supreme Court made a similar inquiry in terms of an Ex Post Facto challenge to Alaska's version of Megan's Law (the "Act"). In finding that the Act was not *Page 35 
punitive in effect, the Court found significant that it did not subject respondents to an affirmative disability or restraint, there was no evidence that the Act led to substantial occupational or housing disadvantages that would not have otherwise occurred, the Act did not require in-person updates, and offenders were "free to move where they wish and to live and work as other citizens; and the regulatory scheme was not excessive with respect to the Act's purpose." Id. at 100-101.
 {¶ 81} Conversely, the AWA does contain residency restrictions, permits landlords to terminate rental agreements, and allows certain governmental officials and property owners to pursue injunctive relief to remove offenders from their homes. See R.C. 2950.034 and 1923.02. Accordingly, offenders are not free to live where they chose. Also, the additional provisions permitting the termination of leases and injunctions to oust them from their homes imposes significant housing disadvantages upon offenders that would otherwise not exist.
 {¶ 82} "The Supreme Court has recognized that the `right to remove from one place to another according to inclination' is `an attribute of personal liberty' protected by the Constitution." United States ofAmerica v. Torres, 566 F.Supp.2d 591, 597 (W.D. Texas 2008), quotingWilliams v. Fears, 179 U.S. 270, 274 (holding that Walsh Act amendments to Bail Reform Act violated Due Process Clause and Excessive Bail Clause of the United States Constitution). It *Page 36 
follows that the residency restrictions that are retroactively imposed on persons, like appellant, who were not previously subjected to them involve substantive rights.
 {¶ 83} Also, unlike the statute at issue in Smith, the AWA imposes requirements that offenders register in person--for some this could entail reporting to three different sheriff departments every 90 days for the rest of their life. R.C. 2950.06 and 2950.07. All tier offenders must submit a significant amount of personal information, which includes (but is not limited to) the following: their name and all aliases; date of birth, social security number and any alternate number used by the offender; the license plate number of every vehicle owned by, registered to, operated by, or available to the offender (including a description of where said vehicles are "habitually" kept); "any email addresses, internet identifiers, or telephone numbers registered to or used by the offender"; and "[a]ny other information required by the bureau of criminal identification and investigation." R.C. 2950.04(C).[16] With these sweeping provisions, particularly one determined at the whim of BCI, preclude any *Page 37 
offender from fully and readily identifying the extent of information he of she is, or will be, required to disclose.
 {¶ 84} A violation of these nebulous reporting requirements could result in significant felony criminal penalties, which aredirectly correlated to the sexually oriented offense(s) that serves as the basis of the registration. See, R.C. 2950.99. It should also be noted that the AWA heightens community notification provisions as well. See R.C. 2950.10(B) and 2950.11. Yet, there is no empirical data to indicate such cumbersome registration, reporting, and notification requirements are necessary to, or effective in, better achieving the legislative goals or from which it could be ascertained that they are not excessive with respect to the AWA's purpose.
 {¶ 85} The dissenting opinion in the Ohio Supreme Court's decision inFerguson, succinctly sets forth the evolution of the sexual registration and notification act provisions from remedial to punitive.Ferguson, 120 Ohio St.3d 7, 2008-Ohio-4824, ¶ 44-62 (dissenting opinion). The AWA's amendments to the law go beyond those at issue inFerguson, and I do not agree with the majority's prediction that the Ohio Supreme Court would continue to uphold the constitutionality of it by applying its analysis of different versions of the law. Quite simply, the AWA is clearly not the same law that withstood constitutional *Page 38 
scrutiny by a unanimous court in Cook, and its drastically altered statutory provisions are an ill fit to the logic that supported the Court's holding in Cook.
 {¶ 86} The changes in the law effected by the AWA and intended to retroactively impact appellant cannot be considered remedial rather than punitive in effect in his case. Appellant was subject to less restrictive registration, notification, and residency provisions by virtue of a judicial determination that he was not likely to engage in sexually oriented offenses in the future. Subsequently, and by virtue of his conviction alone, appellant was retroactively subjected to new burdens, duties, obligations, and liabilities concerning his conviction for a crime that serves as the basis of his registration and notification requirements. I would find the retroactive application of the AWA provisions to appellant violate the Retroactivity Clause of the Ohio Constitution. *Page 39 
 C. Ex Post Facto Clause of the United States Constitution.
 {¶ 87} "[A]ny statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto. The constitutional prohibition and the judicial interpretation of it rest upon the notion that laws, whatever their form, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive, and that the criminal quality attributable to an act, either by the legal definition of the offense or by the nature or amount of the punishment imposed for its commission, should not be altered by legislative enactment, after the fact, to the disadvantage of the accused." Beazell v. Ohio (1925), 269 U.S. 167, 170.
 {¶ 88} "The purpose of the Ex Post Facto Clause is to ensure that legislative acts `give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed.'"Cook, supra at 414, quoting Weaver v. Graham (1981), 450 U.S. 24, 28-29.
 {¶ 89} The Ex Post Facto Clause applies only to criminal statutes.Cook, supra at 415. Accordingly, it must be determined whether the statute at issue is criminal or civil. Id. In addressing this concern under former versions of Ohio's *Page 40 
SORN laws, the Ohio Supreme Court applied the "intent-effects" test to ascertain whether the sex offender registration and notification statutes constituted civil or criminal statutes. Id., citing Roe v.Office of Adult Probation (C.A.2, 1997), 125 F.3d 47, 53-55; Russell v.Gregoire (C.A.9, 1997), 124 F.3d 1079; Doe v. Pataki (C.A.2, 1997),120 F.3d 1263, 1274-1276; see, also, Kansas v. Hendricks (1997),521 U.S. 346.
 {¶ 90} "In applying the intent-effects test, this court must first determine whether the General Assembly, `in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other' and second, where the General Assembly `has indicated an intention to establish a civil penalty, *** whether the statutory scheme was so punitive either in purpose or effect as to negate that intention.'" Id., quoting United States v. Ward (1980),448 U.S. 242, 248-249, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742, 749.
 {¶ 91} The General Assembly, through the provisions of the AWA, has expressly dictated which label applies to an offender that is correlated to, and determined solely by, his or her conviction(s). However, as set forth previously, the General Assembly expressed a remedial intent in the legislation. However, the stated purpose of protecting the public from those likely to reoffend is substantially undermined by the total removal of any discretion or consideration in applying the tier labels to a particular offender. The fact of conviction alone *Page 41 
controls the labeling process, but simply is not in and of itself indicative of a realistic likelihood of a person to recidivate. In addition, the severity of the potential penalty for violating the SORN provisions of the AWA depends upon the underlying offense that serves as the basis for the offender's registration or notification conditions. The provisions of the AWA at issue are found in the criminal section of the Ohio Revised Code, which, while not dispositive, is indicative of an intent to impose criminal punishment. Mikaloff v. Walsh (Sept. 4, 2007), N.D.Ohio No. 5:06-CV-96.
 {¶ 92} Even if the intent to impose a civil penalty is accepted, the effect of applying its provisions retroactively to appellant is punitive as detailed above. For this reason, I believe the retroactive application of the AWA to appellant violates the Ex Post Facto Clause of the United States Constitution.
[5] S.B. 10 is "AN ACT to amend sections 109.42, 109.57, 311.171,1923.01, 1923.02, 2151.23, 2151.357, 2152.02, 2152.19, 2152.191,2152.22, 2152.82, 2152.83, 2152.84, 2152.85, 2152.851, 2743.191,2901.07, 2903.211, 2905.01, 2905.02, 2905.03, 2905.05, 2907.01, 2907.02,2907.05, 2921.34, 2929.01, 2929.02, 2929.022, 2929.03, 2929.06, 2929.13,2929.14, 2929.19, 2929.23, 2930.16, 2941.148, 2950.01, 2950.02, 2950.03, 2950.31, 2950.04, 2950.041, 2950.05, 2950.06, 2950.07, 2950.08,2950.081, 2950.10, 2950.11, 2950.12, 2950.13, 2950.14, 2953.32, 2967.12,2967.121, 2971.01, 2971.03, 2971.04, 2971.05, 2971.06, 2971.07, 5120.49,5120.61, 5120.66, 5139.13, 5149.10, 5321.01, 5321.03, and 5321.051; to amend, for the purpose of adopting new section numbers as indicated in parentheses, sections 2152.821 (2152.811) and 2950.031 (2950.034); to enact new section 2950.031 and sections 2152.831, 2152.86, 2950.011, 2950.32, 2950.033, 2950.042, 2950.043, 2950.131, 2950.15, and 2950.16; and to repeal sections 2152.811, 2950.021, 2950.09, and 2950.091 of the Revised Code to revise Ohio's Sex Offender Registration and Notification Law and conform it to recently enacted requirements of federal law contained in the Adam Walsh Child Protection and Safety Act of 2006, to increase the penalties for certain violations of kidnapping, aggravated murder when a sentence of death or life without parole is not imposed, and murder when the victim of any of those offenses is less than 13 years of age and the offense was committed with a sexual motivation and require that those sentences be served under the Sexually Violent Predator Sentencing Law, and to declare an emergency." S.B. 10, synopsis.
[6] Sex Offense Registration and Notification Law.
[7] The label automatically attached upon conviction for a violent sexually oriented offense or upon a conviction on a sexually violent predator specification.
[8] Under the AWA, the court now only considers these factors if it is inclined not to impose community notification upon a Tier III offender or those subject to community notification under R.C. 2950.11(F)(1)(a), (b), or (c). R.C. 2950.11(F)(2)(a)-(k). The statute provides that those who would not be subject to community notification under the old law would not be subject to it now either.
[9] See, State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 45
(identifying numerous and significant amendments to R.C. Chapter 2950
from the version(s) reviewed by the Ohio Supreme Court in State v.Cook, 83 Ohio St.3d 404, 1998-Ohio-291 and State v. Williams,88 Ohio St.3d 513, 2000-Ohio-428).
[10] R.C. 2905.01(B) provides: "No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:
 "(1) Remove another from the place where the other person is found;
 "(2) Restrain another of the other person's liberty;
 "(3) Hold another in a condition of involuntary servitude."
[11] The goal being identified as "community safety."
[12] Id., quoting, State v. Lyttle (Dec. 22, 1997), Butler App. No. CA97-03-060.
[13] "These guideposts include `whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment — retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned * * *.'" Id., quoting Kennedy, Id., 372 U.S. at 168-169.
[14] Id. at 422, citing former R.C. 2950.09(D)(1). Later amendments to the law deleted this provision, and those designated sexual predators by a court of law could no longer petition the courts to have the label, or its obligations, removed.
[15] But see dissent by Justice Lanzinger, joined by Justices Pfeiffer and Lundberg Stratton, finding R.C. Chapter 2950 has evolved from remedial to punitive and, therefore, when applied retroactively violates both the Ex Post Facto Clause of the United States and Retroactivity Clause of the Ohio Constitution. Id. at ¶ 62.
[16] Compare with statutory provisions upheld in Cook where the court observed, "[o]ffenders must supply only their names, addresses, business addresses, photographs, fingerprints, and, in some instances, license plate numbers and a statement disclosing that they have been adjudicated a sexual predator or habitual sex offender. R.C. 2950.04(B) and (C);2950.07." Cook, 83 Ohio St.3d at 421. *Page 1